UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

CAMP SUMMIT OF SUMMITVILLE, INC.,                06-CV-4994 (CM) (GAY)

        Plaintiff,

    -against-

SHELLIE SANTAY VISINSKI,

        Defendant.
———————————————————————x

### DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS

McMahon, J.:

      Defendant/counterclaim-plaintiff Shellie Santay Visinski ("defendant" or "Visinski")

brings this counterclaim against plaintiff/counterclaim-defendant Camp Summit of Summitville,

Inc. ("plaintiff" or "Camp Summit"), alleging that plaintiff committed a slew of unlawful acts in

connection with its short-lived employment of Visinski as its camp director.

      Prior to joining Camp Summit, Visinski served for ten years as camp director at another

summer camp, Camp Pocono Ridge ("Pocono Ridge").  When Pocono Ridge's owners sold the

camp in September 2005, Visinski purchased Pocono Ridge's tradename and its list of current

campers.  Employment negotiations between Visinski and Camp Summit – which began in Spring

2005, when Summit first became aware that Pocono Ridge would be sold – eventually led to an

oral agreement in October 2005.

      Under the various terms of this oral contract, Visinski became Camp Summit's full-time

camp director, and Summit agreed to pay Visinski commissions on tuition paid by former Pocono

Ridge campers whom Visinski enrolled at Summit.  The parties further agreed that the 2006

summer season would be called "Pocono Ridge at Camp Summit," Summit and Pocono Ridge would merge their camper databases for the 2006 season, and Summit would be permitted to use the Pocono Ridge tradename for the 2006 season (but defendant otherwise retained ownership of the tradename).  Summit also granted Visinski the right to acquire an ownership interest in Summit if certain conditions were met.

Visinski began working for Camp Summit immediately in October 2005, recruiting over 100 campers to attend Summit's 2006 season.  However, allegedly because no written agreement had been signed by the parties, Visinski enrolled campers using her own form (rather than Summit's enrollment form), and she asked parents to make tuition payments directly to an entity that Visinski owned and operated (rather than to Summit).

By early 2006, the relationship between the parties began to deteriorate, and in May 2006, Camp Summit terminated Visinski's employment and hired another camp director.  However, Summit continued to use the tradename and camper list owned by defendant as it prepared for the 2006 summer.

Visinski's counterclaim alleges twelve separate causes of action: trademark violations and infringement (count one), unfair competition (count two), tortious interference (count three), fraud, deceit, misrepresentation (count four), breach of contract (count five), lack of good faith or fair dealing (count six), quantum meruit/unjust enrichment (count seven), defamation (count eight), conversion (count nine), loss of business for unlawful use of confidential information (count ten), unlawful appropriation of defendant's identity or person (count eleven), and intentional or negligent infliction of emotional distress (count twelve).

Camp Summit moves to dismiss counts three, four, five, six, eight, nine, ten, and twelve.

For the reasons stated below, plaintiff's motion to dismiss the fifth cause of action is denied, but its motion to dismiss the third, fourth, sixth, eighth, ninth, tenth and twelfth causes of action is granted.

## I. **Background**

The following well-pleaded facts are presumed true.

For almost fifty years, members of Visinski's family owned and operated a sleepaway camp for children in Pennsylvania, named Camp Pocono Ridge.  (Countercl. ¶ 168.)  The family members owned the camp through an entity named Camp Pocono Ridge, Inc. II.  (Id.)  During this fifty year period, the owners invested significant resources into the promotion of the Camp Pocono Ridge tradename; during that time, "the public in several states bordering or near the eastern seaboard" came to use shortened versions of that tradename, including "Camp Pocono" and "Pocono Ridge," to signify the camp.  (Id. ¶¶ 170-71.)  The tradename – as well as its shortened versions – have been used by the camp owners continuously and are "expected to be so used in the summer camp business and operations in the future."  (Id. ¶ 171.)  Moreover, the tradename has become synonymous with "care, skill, integrity, industriousness and reliability, resulting in a multi-state reputation for excellence and high quality in children's summer camps." (Id. ¶ 172.)

Although Visinski never owned stock in or served as an officer or corporate director of Camp Pocono Ridge, Inc. II, the camp employed her as the full-time, year-round camp director from at least September 1995 until September 2005, when defendant's family sold the property on which the camp was situated to a charitable organization.  (Id. ¶¶ 169, 173.)  During her tenure as camp director, defendant "acquired and enjoyed a reputation as an excellent and outstanding

3

camp director" which resulted in a "considerable following with and among campers and their parents." (Id. ¶ 175.)

In Spring 2005, Camp Summit became aware that Visinski's family intended to sell Pocono Ridge and plaintiff offered defendant a position as Summit's camp director for the 2006 season. Visinski declined the offer because she "wanted more than a camp director's position if the sale of Camp Pocono Ridge was consummated." (Id. ¶ 177.) However, the parties resumed communications in July 2005 and continued negotiating throughout the summer while Visinski completed her final season as Pocono Ridge's director. (Id. ¶¶ 178-79.)

Shortly after the camp season ended, in September 2005, Visinski's family consummated the sale of the land on which Pocono Ridge was located. The camp was thereafter discontinued. "All of the other tangible and intangible assets" of Camp Pocono Ridge Inc., II – including the tradename and camper list – were sold to Visinski. (Id. ¶¶ 173-74.) The camper list thus became "the sole and exclusive confidential property of defendant." (Id. ¶ 183.)

Following the sale of the camp, in October 2005, "a verbal understanding and agreement was reached and expressed between defendant and plaintiff." (Id. ¶ 179.) Key provisions of this oral agreement included:

> (i) defendant becoming the full-time, 12 month per year camp director of Camp Summit at a salary of $50,000.00 per year;
>
> (ii) informing previous Camp Pocono Ridge campers and parents that the 2006 season would be Pocono Ridge at Camp Summit with [Visinski] being the camp director to ease the transition for the campers;
>
> (iii) paying a commission to [Visinski] of 15-20% of the tuition fees of the previous Camp Pocono Ridge and new campers enrolled by [Visinski] for the 2006 summer season, such commission rate depending on the number of campers enrolled;

4

(iv) merging the computer databases and information of Camp Pocono Ridge and Camp Summit for the 2006 season;

(v) reserving the exclusive ownership and rights in the Camp Pocono Ridge, Camp Pocono and Pocono Ridge names and trademain in and to defendant, excepting only the 2006 summer camp season for transitory purposes, but only for such transition purposes upon the express condition that [Visinski] have a signed agreement with plaintiff before plaintiff could have permission to use the Pocono Ridge names, tradename and good will for the 2006 transition period; and

(vi) granting to [Visinski] the right and option to acquire an ownership interest in Camp Summit depending on the existence of certain conditions.

* * *

[P]laintiff agreed to keep [Visinski's camper list] confidential and only use same for the mutual benefit of the parties . . . .

(Id. ¶¶ 180, 183.)

Although Camp Summit promised to prepare a conforming written contract quickly, it urged Visinski to begin working as its director immediately – without a written contract in place – "so that prospective campers would not be lost to competitors" and recruiting and promotion of the 2006 camp season could commence.  (Id. ¶ 181.)  Trusting that Camp Summit would draft the conforming agreement in due time, Visinski commenced working as its director in October 2005.

As part of their agreement, Visinski disclosed Pocono Ridge's camper list to Summit.  (Id. ¶ 182.)  In addition, both parties began informing previous Pocono Ridge campers that Visinski would become Camp Summit's director in 2006, thereby "induc[ing] a significant number of previous Camp Pocono Ridge campers and others to choose going the camp in 2006 where [defendant] would be the camp director."  (Id. ¶ 185.)

Visinski personally recruited over 100 campers to enroll at Camp Summit for the 2006 season, all of whom enrolled "only . . . because of their belief and desire that defendant would be

the 2006 summer camp director.  (Id. ¶¶ 186, 192.)  Defendant's personal recruitment entitled her to a 20% commission of her enrollees' tuition fees.  (Id. ¶ 186.)  Because Summit had not yet drafted the written contract memorializing the parties' verbal agreement, Visinski required "her" recruits to enroll for the 2006 season by completing an application form drafted by defendant – a form that differed from the form used by Camp Summit.  (See id. ¶ 193.)  Moreover, Visinski directed her recruited campers to "wr[i]te checks to an account separate and apart from Camp Pocono Ridge and from Camp Summit, i.e., to an entity of defendant named Fancyface, LLC, as both parties agreed that none of those tuition fees and deposits would be the property of Camp Summit . . . until there was a mutually agreed upon signed contract between the parties."  (Id. ¶ 187.)  In addition to recruiting campers, Visinski also fulfilled her director duties by marketing Camp Summit in "many states and Europe," and recruiting counselors, coaches and staff that had previously worked for Pocono Ridge.  (Id. ¶ 190.)

Sometime between October 2005 and early 2006, Summit drafted a document entitled "Employment Agreement," which was intended to memorialize the parties' agreement.  (Id. ¶ 191.)  However, Visinski did not accept this document as the final written agreement and the parties continued to negotiate over the written agreement's details.

By May 2006, Visinski noticed that Camp Summit's principal owner, David Stern, had removed himself from the negotiation process, and that "lengthy periods of time ensued when defendant tried to, but could not communicate verbally or in person with plaintiff."  (Id. ¶ 192.) Visinski also became aware that Summit had "caused the parents" of all campers recruited by defendant – who had initially signed the Pocono Ridge at Camp Summit enrollment form drafted by defendant – to "sign or resign their child's enrollment at Camp Summit on Camp Summit's

6

own form." (Id. ¶ 193.) Nevertheless, Visinski continued to carry out her director responsibilities.

At the end of May 2006, Summit "denied defendant access to plaintiff's computer and the database that was being used in connection with defendant's employment." (Id. ¶ 195.)  Summit subsequently terminated Visinski and hired another camp director for the 2006 season, "while continuing to use the name, tradename and good will of Camp Pocono Ridge and defendant." (Id. ¶ 196.)  Summit "now asserts rights in defendant's property," namely, the Pocono Ridge tradename. (Id. ¶ 200.)

Camp Summit filed suit against Visinski on June 28, 2006, alleging causes of action for defendant's breach of duty of loyalty, conversion, trespass to chattel, defamation, tortious interference with existing economic advantage, tortious interference with prospective economic advantage, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.

On July 20, 2006, Visinski answered the complaint and filed a counterclaim against Summit alleging the twelve causes of action noted above. (Countercl. ¶¶ 202-69.)

On September 8, 2006 Summit moved to dismiss Visinski's claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, conversion, defamation, tortious interference, loss of business for unlawful use of confidential information, and intentional infliction of emotional distress. (Pl.'s Mot. to Dismiss at 1.)

## II.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted.  The standard of review on a motion to dismiss is heavily weighted in favor of the claimant.  "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the

material facts alleged in the complaint [or counterclaim] as true." Frasier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991). The court is also required to read a counterclaim generously, drawing all reasonable inferences from its allegations in favor of the claimant. See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972). The court must deny the motion "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." Stewart v. Jackson & Nash, 976 F.2d 86, 87 (2d Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Additionally, the Rules do not require the claimant to set out in detail the facts upon which he bases a claim, but only that he gives a statement of his claim that will give the opposing party "fair notice of what [claimant's] claim is and the grounds upon which it rests." Conley, 355 U.S. at 45-46.

### III. Discussion

#### A. Choice of Law Analysis

Subject matter jurisdiction in this case is based upon the parties' diversity of citizenship, so I must first determine which substantive state law governs. The parties cite primarily to New York law in their briefs. "Where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, NJ, 160 F.3d 124, 128 (2d Cir. 1998). Thus, the court will apply New York substantive law to this case.

#### B. Breach of Contract (Fifth Cause of Action)

For her fifth cause of action, Visinski alleges that Camp Summit breached its October 2005 oral agreement with her by ceasing to pay her salary in May 2006, refusing to pay commissions owed to her based on camper tuition fees, terminating her employment with Camp

8

Summit prior to the 2006 season, and continuing to use the Pocono Ridge tradename without her consent.  (Countercl. ¶ 232.)

In its motion to dismiss, Summit relies exclusively on New York's Statute of Frauds, arguing that the parties' oral agreement could not be performed within one year of its making in October 2005 and is therefore unenforceable.  (Pl.'s Mot. to Dismiss at 9-10.)

Under New York's Statute of Frauds, an oral agreement is void if it "is not to be performed within one year from [its] making," and there is no written memorandum of the agreement "subscribed by the party to be charged."  N.Y. Gen. Oblig. Law § 5-701(a)(1) (McKinney 2007).  In determining whether an oral contract could be performed within one year, "'The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should <u>not</u> be performed within the year.'"  <u>D & N Boening, Inc. v. Kirsch Beverages, Inc.</u>, 63 N.Y.2d 449, 454 (N.Y. 1984) (quoting <u>Warner v. Texas & Pacific Ry.</u>, 164 U.S. 418, 434 (1896)) (emphasis added).  Where an oral agreement between the parties calls for performance of an indefinite duration and may only be terminated within one year by a party's breach, the contract falls within the Statute of Frauds and is void.  <u>Id.</u> at 457; <u>see also</u> <u>Celi v. Canadian Occidental Petroleum Ltd.</u>, 804 F. Supp. 465, 469 (E.D.N.Y. 1992).

However, absent an express agreement of fixed duration, "an employment relationship is presumed to be at-will."  <u>Colodney v. Continuum Health Partners, Inc.</u>, No. 03-CV-7276, 2004 WL 829158, at *5 (E.D.N.Y. Apr. 15, 2004) (citing <u>Horn v. New York Times</u>, 760 N.Y.S.2d 378, 380 (N.Y. 2003)).  Because an at-will employment relationship "can be terminated by either party for any reason or without reason . . . . [a]n at-will employment relationship may . . . usually be

completed within a year." <u>Guilbert v. Gardner</u>, 480 F.3d 140, at *8 (2d Cir. 2007).  Accordingly, "employment agreements of this type are without the proscription of the Statute of Frauds concerning one-year performance."  <u>Id.</u>; <u>see also</u> <u>Weiner v. McGraw-Hill, Inc.</u>, 57 N.Y.2d 458, 463 (N.Y. 1982) (holding that employment agreement "whether terminable at-will or only for just cause, is not one which, by its terms, could not be performed within one year and, therefore, is not one which is barred.").

The alleged verbal agreement between Visinski and Camp Summit constitutes an at-will employment contract and therefore could be performed within one year.  Among its several provisions, only two threaten its validity under the Statute of Frauds: 1) Visinski's becoming "the full-time, 12 month per year camp director of Camp Summit at a salary of $50,000.00 per year," and 2) Summit's granting to Visinski the "option and right to acquire an ownership interest in Camp Summit after the 2006 camp season," such option "depending on the existence of certain conditions."  (Countercl. ¶¶ 180, 230.)

Contrary to Summit' argument, a "full time, 12 month per year" employment contract is not the equivalent of a fixed term, one-year contract.  The quoted language indicates only that Visinski had to work full-time, all the year round, in her new job, for however long she held it. The contract sets no duration or term of service; it does not say that it is for a one, two, or ten year term.  As such, the contract is for at-will employment, it may be terminated by either party within one year without breach, and it therefore falls outside the Statute of Frauds.  <u>Guilbert</u>, 480 F.3d at *8.

Visinski's alleged option to acquire an ownership interest in Camp Summit "after the 2006 camp season," does not alter this result.  (Countercl. ¶ 230.)  The parties allegedly agreed to

the oral contract terms sometime during October 2005. The phrase "after the 2006 camp season" includes dates in September or October 2006 (and perhaps August as well). Therefore, this option could be exercised within one year of the contract's making.

The fact that Visinski's ownership interest in Camp Summit would carry "through 2007" (Pl.'s Mot. to Dismiss at 9) has no bearing on whether the contract falls within the Statute of Frauds. The inquiry is whether performance could have occurred within one year of the contract's making, not whether a party could maintain the benefit of such performance beyond one year. Performance, here, is the <u>transfer</u> of ownership. While Visinski does not specify what "conditions" must exist for her ownership option to vest, there is no reason to presume at this procedural stage that the conditions would occur after October 2006.

Last, to the extent that Summit contends that Visinski's claim is premised on Summit's failure to draft an acceptable written agreement that memorialized the parties' verbal agreement – i.e., their oral agreement to execute a written agreement – that agreement could also have been performed within one year. Indeed, Visinski alleges that she expected the written agreement to be consummated immediately after the verbal agreement was reached in October 2005. (Countercl. ¶¶ 181-82.) Although an "oral agreement to agree . . . remains subject to the statute of frauds," <u>Stillman v. Townsend</u>, No. 05-CV-6612, 2006 WL 2067035, at *3 (S.D.N.Y. Jul. 26, 2006), this alleged agreement falls safely outside that rule.

Plaintiff's motion to dismiss this claim is therefore denied.[1]

_____

[1] In Summit's reply brief section discussing the breach of contract claim, plaintiff contends for the first time that this court should dismiss Visinski's seventh cause of action for unjust enrichment. (Pl.'s Reply Br. at 5.) Summit did not seek dismissal of defendant's unjust enrichment claim in its opening brief and, consequently, Visinski had no opportunity to rebut Summit's argument. This court will not consider a motion to dismiss a claim first raised in a

### C.  Breach of the Covenant of Good Faith and Fair Dealing (Sixth Cause of Action)

Visinski's sixth cause of action alleges that Summit's actions "were undertaken intentionally and deliberately to deprive defendant of monies and property . . . and constituted . . . an intentional and wilful breach of plaintiff's duty of acting in good faith and fairly with defendant."  (Countercl. ¶ 238.)

It is axiomatic that "A contract claim for alleged breach of the implied covenant of good faith and fair dealing is duplicative of a claim for breach of contract and should be dismissed." Edwards v. Great Northern Ins. Co., No. 03-CV-2947, 2006 WL 2053717, at *8 (E.D.N.Y. Jul. 21, 2006); see also Core-Mark Intern. Corp. v. Commonwealth Ins. Co., No. 05-CV-183, 2005 WL 1676704, at *4 (E.D.N.Y. Jul. 19, 2005); New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 319-20 (N.Y. 1995).  While parties to a binding contract are bound by an implied duty of good faith, the "breach of that duty is merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992).

Accordingly, Visinski's sixth cause of action is dismissed.

### D.  Fraud (Fourth Cause of Action)

Visinski's fourth cause of action alleges that Camp Summit induced her 1) to begin working immediately for Summit, 2) to disclose the Pocono Ridge camper list to the camp, and 3) to allow Summit to use the Pocono Ridge tradename, immediately after the parties orally agreed to contract terms in October 2005, in return for Summit's prompt preparation of a written agreement embodying all of these terms.  (Countercl. ¶¶ 218-224.)  Yet, according to the counterclaim, Summit "never intended to provide an agreement that contained all the terms that

---

reply brief.

12

defendant desired and which had heretofore been verbally agreed upon."  (Id. ¶ 223.)  Instead, "plaintiff determined to stall the contract finalization process" so that Summit could gain control of the Pocono Ridge camper list and tradename – while Visinski enrolled as many former Pocono Ridge campers as possible – after which Summit would "terminate defendant's employment and keep all of the tuition fees and profits all to itself."  (Id. ¶ 224.)

Where a fraud claim is brought alongside a breach of contract claim, the claimant "must distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages."  Colodney, 2004 WL 829158, at *9 (citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996)).  Although "a valid fraud claim may be premised on misrepresentations that were made before the formation of the contract and that induced the plaintiff to enter the contract," Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994), an assertion that the alleged defrauder "made intentionally false statements regarding their intent to fulfill the terms of the contract does not constitute a misrepresentation collateral or extraneous to a contract."  Colodney, 2004 WL 829158, at *9 (citing Bridgestone/Firestone, 98 F.3d at 19).  Thus, a "contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations."  Rocanova v. Equitable Life Assurance Society of the United States, 612 N.Y.S.2d 339, 343 (N.Y. 1994); see also Caniglia v. Chicago Tribune-New York News Syndicate, Inc., 612 N.Y.S.2d 146, 147 (1st Dep't 1994).

Here, Summit's alleged fraud consists entirely of misrepresenting its intention to honor the terms of the verbal agreement.  (Countercl. ¶¶ 218-224.)  Visinski's opposition papers confirm

that her fraud claim rests on three

> Representation[s] of material fact or intention: Plaintiff represented to defendant
> its present intention [1] to pay her a 20% commission of the tuition and fees of
> each new camper who was a former Camp Pocono camper . . .; [2] to provide an
> equity or ownership interest in Camp Summit . . .; and [3] to refrain from using
> defendant's camper lists, trademarks and names . . . until a signed contract
> embodying the parties total series of agreements is signed . . . .

(Def.'s Opp. Br. at 17.)

Each of these alleged misrepresentations constitutes nothing more than Summit's "alleged intent to breach a contractual obligation," Caniglia, 612 N.Y.S.2d at 147, and, consequently, are not separately actionable. Indeed, these statements represent three of the six so-called "key provisions" of the parties' oral agreement; i.e., these are the precise bargained-for-benefits that Visinski was to receive under the contract (Countercl. ¶¶ 180, 230-34) and, therefore, are clearly not "extraneous to the terms of the contract." Alter v. Bogoricin, No. 97-CV-0662, 1997 WL 691332, at *9 (S.D.N.Y. Nov. 6, 1997); cf. Stewart, 976 F.2d at 89 (holding defendant law firm fraudulently induced plaintiff environmental lawyer to join firm by misrepresenting that it had recently secured large environmental law client and was in process of establishing environmental law department, because such misrepresentations were extraneous to the plaintiff's actual employment contract); Colodney, 2004 WL 829158, at *9-10 (denying motion to dismiss fraud claim where employee alleged that employer induced him to sign employment contract by misrepresenting that company "engaged in strategic and business planning," because such statement "was extraneous to the terms of any agreement between the parties"). Moreover, Visinski identifies no separate legal duty that Camp Summit owed her – apart from its duty to honor its contract obligations – nor does she claim that she "sustained any special damages not recoverable under [her] breach of contract claim." Alter, 1997 WL 691332, at *9.

14

Furthermore, Visinski's allegation that Summit "never intended to provide an agreement that contained all the terms . . . which had theretofore been verbally agreed upon," (Countercl. ¶ 233), also fails to plead a collateral misrepresentation which could substantiate a fraud claim. Visinski alleges that Summit's duty to memorialize the parties' oral contract, was itself a provision of that oral contract.  (Id. ¶ 230) ("Pursuant to such [oral] agreement . . . no such use of . . . tradename would be permitted . . . until plaintiff and defendant had a mutually acceptable signed agreement.").  And Visinski includes Summit's failure to draft an acceptable written agreement in a laundry list of Summit's alleged breaches under the contract.  (Id. ¶ 232.)  As pleaded by Visinski, this alleged failure to draft a written agreement is part and parcel of the parties' oral contract and, therefore, is clearly not extraneous to that contract.

Therefore, defendant's fourth cause of action for fraud is dismissed.

### E.  Conversion (Ninth Cause of Action)

Visinski's ninth cause of action alleges that Camp Summit's "unauthorized and continued use of the names, tradename and confidential and proprietary information of and owned by defendant," as well as "plaintiff's withholding from and non-payment to defendant of commission monies based on camper tuition fees," constitute conversion.  (Id. ¶ 254.)

The tort of conversion is the "exercise of unauthorized dominion over the property of another in interference with [that person's] legal title or superior right of possession."  Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc., 148 F. Supp. 2d 321, 328 (S.D.N.Y. 2001) (citing Lopresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997)).  The party asserting a conversion claim must allege that it had "ownership, possession or control of the [property] before its conversion."  Id.; see also ESI, Inc. v. Coastal Power Prod. Co., 995 F. Supp. 419, 433 (S.D.N.Y. 1998).  "Where the

15

original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." Colodney, 2004 WL 829158, at *11.

Furthermore, "a claim for conversion is deemed redundant, and may be dismissed pursuant to Rule 12(b)(6), where damages are merely being sought for a breach of contract." W.B. David & Co., Inc. v. DWA Communications, Inc., No. 02-CV-8479, 2004 WL 369147, at *5 (S.D.N.Y. Feb. 26, 2004); see also Pandisc Music Corp. v. Red Distribution, LLC, No. 04-CV-9365, 2005 WL 646216, at *1 (S.D.N.Y. Mar. 18, 2005) ("It is well established that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated . . . . Causes of action for conversion, in particular, are subject to this rule.") (internal quotations marks and citations omitted).  For example, in Pandisc Music Corp., plaintiff record company brought a conversion claim against defendant record distributor, for destroying all of plaintiff's remaining records that defendant still possessed following expiration of their distribution agreement.  The court dismissed plaintiff's claim, noting

> defendant's possession of plaintiffs' property was governed not by the independent duties owed by one citizen to another under general tort principles, but by a specific agreement negotiated between the parties.  Defendant held the property with certain rights and obligations determined by contract . . . . Thus, whether defendant violated any duty to plaintiffs is governed by the contract, and the remedy for any such violation is an action for breach of that contract.

Pandisc Music Corp., 2005 WL 646216, at *1.

Here, Visinski's conversion claim fails for two reasons.  First, it is clear from her counterclaim that Camp Summit's use of her camper list and the Pocono Ridge tradename was authorized for the 2006 season.  As Visinski alleges, "Key provisions of the verbal agreement involved . . . (iv) merging the computer databases and information of Camp Pocono Ridge and

16

Camp Summit for the 2006 season." (Countercl. ¶ 180.)  And although Visinski asserts that the oral agreement permitted Summit to use the Pocono Ridge tradename only after the parties entered into a written contract, Visinski waived this condition of the oral agreement: "Defendant reasonably believed plaintiff's representation that plaintiff would prepare a written agreement embodying the key terms of the parties [sic] verbal agreement, and so defendant . . . recognizing that it was already late in the commencing of work for the next camp season, entered into the employ of Camp Summit and disclosed the Camp Pocono Ridge camper and parent lists to plaintiff to allow recruitment, marketing, mailings, and planning to commence and continue." (Id. ¶ 182.)  Although Visinski does not explicitly state that she authorized Summit to use the Pocono Ridge tradename, her authorization is implicit given her statement that she entered Camp Summit's employ and permitted the camp to promote the upcoming "Pocono Ridge at Camp Summit" season.  (Id. ¶ 180.)  Thus, by Visinski's own admission, Summit's use of the camper list and Pocono Ridge tradename was authorized for the 2006 season.

Second, even if Visinski demanded the property's return and Summit refused,[2] the allegedly converted items are subject to the oral contract at the root of this dispute.  Visinski claims that Summit converted the camper list, the Pocono Ridge tradename, and commissions earned by defendant for enrolling former Pocono Ridge campers at Camp Summit.  (Id. ¶ 254.) But in her breach of contract claim, Visinski lists these exact items among the several bargained-for-benefits between the parties.  (Id. ¶ 230.)  Although Visinski argues in her opposition papers

---

[2] Although Visinski allegedly demanded that Summit cease and desist using the Pocono Ridge tradename (Countercl. ¶ 204), she does not allege to have demanded return of the camper list.  Such a demand is required to state a claim for conversion where the claimant initially authorized the opposing party to use the property.  Colodney, 2004 WL 829158, at *11.

that, "The . . . agreement by plaintiff not to use defendant's camper lists and data (and her tradename) is separate from the employment representations and promises" (Def.'s Opp. Br. at 23), the counterclaim clearly contradicts that assertion; all of these promises were bound together in the alleged oral agreement.  (Id. ¶¶ 180, 230.)  Moreover, Visinski does not allege any separate duty owed to her by Camp Summit, beyond its contractual obligations.  Thus, Visinski's conversion claim must be dismissed.  See Pandisc Music Corp., 2005 WL 646216, at *1.

## F.  Defamation (Eighth Cause of Action)

Visinski's eighth cause of action alleges that Camp Summit defamed her in two ways: by sending "emails, correspondence and/or other written communications to 2006 summer campers and/or their parents or guardians which expressly or impliedly stated that defendant had engaged in criminal or illegal conduct," and by having "verbal conversations with certain parents or guardians of campers, where . . . plaintiff called defendant a 'thief' or a 'crook.'" (Countercl. ¶¶ 245-46.)

In order to establish a defamation claim under New York law, a claimant must allege "(i) a false and defamatory statement of fact, (ii) of or concerning the claimant, (iii) publication to a third party, and (iv) injury to the claimant as a result."  Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000).  While the defamation need not be plead in haec verba, "a pleading is only sufficient if it adequately identifies 'the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.'"  Id. (quoting Broome v. Biondi, No. 96-CV-0805, 1997 WL 83295, at *2 (S.D.N.Y. Feb. 10, 1997)). "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself."  Id. (internal quotation marks

18

and citations omitted).  Mere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim.  Id.; see also Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 271 (2d Cir. 1999).

The threshold inquiry in determining the validity of a defamation claim is, of course, "whether the statements made are potentially defamatory.  Only words reasonably susceptible of defamatory meaning are actionable." Qureshi v. St. Barnabas Hosp. Ctr., 430 F. Supp. 2d 279, 287 (S.D.N.Y. 2006).  A statement has a defamatory meaning if it "'tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" Id. (quoting Foster v. Churchill, 87 N.Y.2d 744, 751 (N.Y. 1996)).  Under New York law "whether particular words are defamatory presents a legal question to be resolved by the court." Id. (internal quotation marks and citations omitted).

A primary consideration in determining whether a statement is defamatory is whether the statement conveys an opinion, for "Under both New York and federal law, statements of pure opinion are not actionable as defamation." Id. at 288; see also Gross v. New York Times Co., 82 N.Y.2d 146, 151 (N.Y. 1993).  On this issue, courts consider "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context . . . are such as to signal . . . listeners that what is being . . . heard is likely to be opinion, not fact." Qureshi, 430 F. Supp. 2d at 288 (citing Gross, 82 N.Y.2d at 152-53).  The thrust of this inquiry is "'whether a reasonable [listener] could have concluded that [the statements were] conveying facts about the plaintiff.'" Stouffer,

19

124 F. Supp. 2d at 850 (quoting <u>Gross</u>, 82 N.Y.2d at 152).

      Even if the court concludes that the alleged statement is defamatory, the statement may be subject to a qualified privilege.  "A communication made bona fide upon any subject matter in which the party communicating has an interest . . . is privileged if made to a person having a corresponding interest . . . although it contained criminating matter which, without this privilege, would be slanderous and actionable."  <u>Esser v. T-Mobile USA, Inc.</u>, No. 03-CV-9485, 2004 WL 1276839, at *1 (S.D.N.Y. June 8, 2004) (quoting <u>Byam v. Collins</u>, 111 N.Y. 143, 150 (N.Y. 1888)).  Courts have applied this common interest privilege to otherwise defamatory communications "between board members of a tenants' association, between a college administrator and members of a faculty tenure committee, and between constituent physicians of a health insurance plan."  <u>Silverman v. Clark</u>, 822 N.Y.S.2d 9, 16 (1st Dep't 2006) (internal citations omitted).

      Here, Camp Summit's alleged statements are undoubtedly defamatory.  Telling campers' parents that Visinski is a "crook" who "engaged in . . . illegal conduct" (Countercl. ¶¶ 245-46), would certainly "induce an evil opinion" of her in the minds of these parents.  <u>Qureshi</u>, 430 F. Supp. 2d at 287.  Additionally, the alleged statements do not convey pure opinion; rather, they "have a precise and readily understood meaning" and "may be proven false," since Visinski either broke the law or she did not.  <u>Cf</u>. <u>Stouffer</u>, 124 F. Supp. 2d at 849-50 (dismissing defamation claim alleging that, prior to plaintiff's filing trademark suit, defendant had publicly called plaintiff's claims "absurd," "ridiculous," and "meritless," because such statements lacked "precise meanings" and are not "susceptible of being proven false.").  Even if Summit's comments could be construed as the low opinion of a disgruntled former employer, parents could reasonably

20

assume that Summit was privy to unseemly facts regarding Visinski – unknown to the parents – that supported such an opinion.  Such statements are actionable.  See Gross, 82 N.Y.2d at 153 (distinguishing between statement of opinion that implies a basis in undisclosed facts, which is actionable, and statement of opinion that is accompanied by a recitation of the facts on which it is based, which is not actionable).

Contrary to Camp Summit's argument, its alleged statements are not subject to the common interest privilege, as the camp and the parents' interests are not directly aligned.  While Summit and the parents share a common interest in the welfare of their campers/children, Summit's comments may also have been motivated by Summit's need to explain Visinski's sudden termination when so many former Pocono Ridge campers followed her to Summit.  In addition, Summit may have been motivated to defame Visinski, since its termination of her meant that both parties would be competing against one another in the summer camp market.  Therefore, "it is more accurate to say that their interests *coincided*," since Visinski's reputation impacted several interests, only one of which Summit and the parents shared.  Silverman, 822 N.Y.S.2d at 16-17 (emphasis in original) (holding privilege did not attach to letters sent by law firm to former clients that questioned competence of former associate who had recently resigned from firm and taken clients with her, because firm's "interest in protecting [its] legal fees falls well outside the scope of the" privilege, and "the relation of the parties [did not] afford reasonable ground for supposing an innocent motive for giving the information").

Although Visinski's defamation claim clears these two hurdles, it stumbles over a more fundamental one.  Defendant does not allege defamation with the requisite specificity.  To wit, she neither alleges who at Camp Summit made the defamatory remarks, nor to whom the

comments were made.  Without these alleged facts, the claim cannot survive a motion to dismiss.
See Stouffer, 124 F. Supp. 2d at 849-50 ("[Claimant's] claim is deficient . . . [because] she
completely fails to identify who made the alleged statements, at what times or places, and to
whom the statements were made."); Keady v. Nike, Inc., 116 F. Supp. 2d 428, 439 (S.D.N.Y.
2000), vacated on other grounds, 23 Fed. Appx. 29 (2d Cir. 2001) (dismissing defamation claim
that asserted "a series of defamatory statements without identifying the substance of those
statements, by whom they were made, or to whom they were communicated"); Ives v. Guilford
Mills, 3 F. Supp. 2d 191, 199 (N.D.N.Y. 1998) (dismissing defamation claim that did not identify
with precision who at defendant company made the alleged statements, at what times or places,
and to whom the statements were made).

    This claim is dismissed with leave to replead.  See Section III.J., infra.

### G.  Tortious Interference with Contract and Prospective Business Advantage (Third Cause of Action)

    Visinski's third cause of action alleges that Camp Summit tortiously interfered "with
defendant's economic advantage, business and/or contractual relationships with campers" by
inducing the campers' parents "to re[-]sign contracts with Summit" and by "defaming defendant
so as to prohibit . . . any future business efforts . . . of defendant as a camp director or owner."
(Countercl. ¶ 215.)  Defendant's third cause of action therefore purports to plead two different
claims: 1) tortious interference with contract and 2) tortious interference with prospective
business advantage.  This court will address them separately.

    1.  Tortious Interference with Contract

    In order to state a claim for tortious interference with contract under New York law, a
party must allege "(1) the existence of a valid contract between itself and a third party for a

specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages." Riddell Sports Inc. v. Brooks, 872 F. Supp. 73, 77 (S.D.N.Y. 1995) (citing Jews for Jesus, Inc. v. Jewish Cmty. Relations Council, Inc., 968 F.2d 286, 295 (2d Cir. 1992)). The claimant must "specif[y] particular contracts that . . . have been breached," id. at 78, and "must allege facts sufficient to establish that the defendant actually interfered with the contract." Alter, 1997 WL 691332, at *12. "The existence of a valid contract is an essential element of the cause of action, and the courts have consistently rejected claims of tortious interferences in its absence." Mobile Data Shred, Inc. v. United Bank of Switzerland, No. 99-CV-10315, 2000 WL 351516, at *7 (S.D.N.Y. Apr. 5, 2000). Last, "economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality." Foster, 87 N.Y.2d at 750.

Here, Visinski's tortious interference with contract claim is premised on a pair of allegations:

> [Defendant's] enrollees placed their tuition fees or deposits with Pocono Ridge at Camp Summit and wrote checks to an account separate and apart from Camp Pocono Ridge and Camp Summit, i.e., to an entity of defendant named Fancyface, L.L.C.
>
> * * *
>
> As summer of 2006 approached, all of the camp enrollees obtained by defendant were already in the fold of Camp Summit as plaintiff had caused the parents of such enrollees to sign or resign their child's enrollment at Camp Summit on Camp Summit's own form, inclusive of all those persons who initially signed the Pocono Ridge at Camp Summit form presented by defendant.

(Countercl. ¶¶ 187, 193.)

Thus, Visinski employs the unusual tactic of pleading that she breached her duty of loyalty to Camp Summit by personally entering into contracts with Summit campers while she

was Summit's employee (id. ¶¶ 184-86), and then accusing Summit of tortiously interfering with those very contracts.  While this court is impressed by Visinski's audacity, her own mouth condemneth her.

It is well-settled under New York law that all employees owe a duty of loyalty to their employers, regardless of whether the employee has a formal employment contract.  See Design Strategies, Inc. v. Davis, 384 F. Supp. 2d 649, 659 (S.D.N.Y. 2005); Western Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 (N.Y. 1977); Louis Capital Mkts., L.P. v. REFCO Group Ltd., LLC, 801 N.Y.S.2d 490, 495 (N.Y. Sup. Ct. 2005).  "An employee is to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties."  Brenner, 41 N.Y.2d at 295 (internal quotation marks and citations omitted).  "Misappropriation of profits, property, [and] business opportunities" all constitute a breach of this duty.  19 Williston on Contracts § 54:26 (4th ed. 2006).  Visinski's allegation that she personally entered into contracts with Summit campers while she was a Summit employee – and that her enrollees paid tuition directly to her – is a clear breach of her duty of loyalty, rendering any contracts between her and "her" campers void.

Even if Visinski did not allege that the contracts at issue constituted a breach of her duty of loyalty, her tortious interference allegations would still fail to state a claim.  The counterclaim neither identifies what contractual rights and duties she and the parents acquired under her enrollment form, nor states the duration of these alleged contracts, nor specifies with whom she

24

contracted.[3]  This paucity of detail warrants dismissal.  See Riddell Sports, 872 F. Supp. at 78.

Furthermore, because Visinski does not allege what obligations the parents undertook pursuant to

their contracts with her, it is impossible to know whether the parents actually breached their

contracts.  Visinski never alleges that the parents breached their contract – not even in the

"tortious interference" section of her counterclaim.  (Countercl. ¶¶ 214-16.)  Without a breach,

there can be no tortious interference claim.  See Riddell Sports, 872 F. Supp. at 78.

Finally, Visinski's admission that she personally accepted "tuition payments or deposits"

from her recruited campers raises another fatal problem for her claim: she does not appear to have

sustained any damages from the alleged tortious interference.  Aside from her conclusory

allegation that she "has and will suffer immediate and irreparable harm and damage" due to

Summit's actions (Countercl. ¶ 216), Visinski offers no underlying facts suggesting she has

incurred damages as a result of the parents' alleged breach.  Without damages, there also can be

no tortious interference claim.  See Riddell Sports, 872 F. Supp. at 77.

For all of these reasons, Visinski's tortious interference with contract claim is dismissed.

2.  Tortious Interference with Prospective Business Advantage

In order to state a claim for tortious interference with prospective business advantage

under New York law, a party must allege: "(i) business relations with a third party; (ii)

defendants' interference with those business relations; (iii) that defendants acted with the sole

---

[3] Even the number of contracts at issue is unknown.  Visinski alleges that she "recruited
over 100 campers" (Countercl. ¶ 186), yet she later alleges that Summit caused "all of the camp
enrollees obtained by defendant" to sign "Summit's own form, inclusive of all those persons who
initially signed" her form.  (Id. ¶ 193.)  Thus, the number of enrollees who signed Visinski's
form is less than the total number of enrollees recruited by her, meaning the number of contracts
at issue could total anywhere from one contract to more than one hundred.

purpose of harming the plaintiff (i.e. with malice) or used dishonest, unfair, or improper means; and (iv) injury to the relationship."  Stouffer, 124 F. Supp. 2d at 850; see also Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994).  Wrongful means include "'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with a business relationship."  United Magazine Co. v. Murdoch Magazines Distrib., Inc., 146 F. Supp. 2d 385, 408 (S.D.N.Y. 2001) (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191 (N.Y. 1980)).

While proof of an existing contract is not necessary, the complaint must allege "interference with a specific identified business relationship with a third party."  Mobile Data Shred, Inc., 2000 WL 351516, at *7; see also Gianni Versace, S.p.A. v. Versace, No. 01-CV-9645, 2003 WL 470340, at *2 (S.D.N.Y. Feb. 25, 2003) (A properly pleaded counterclaim for this tort "must allege relationships with specific third parties with which the respondent interfered."). "Generalized allegations of impairment to [claimant's] ability to attract new business will not suffice."  Mobile Data Shred, Inc., 2000 WL 351516, at *7.

In her opposition papers, Visinski provides some much needed clarification regarding the basis for this cause of action:

> The third parties [relevant to this claim] are the same campers who did actually enroll with defendant's Camp Pocono at Camp Summit, and not with Camp Summit . . . . [P]laintiff, under false pretenses, indicated to campers that defendant would be the 2006 camp director, thereby tricking these campers into signing or re-signing only on Camp Summit's enrollment contracts . . . . Now that these campers have attended Camp Summit in 2006, it is probable that a number of them will return to Camp Summit . . . . The damage to defendant . . . extends into the next ensuing several future camp seasons where defendant could have otherwise recruited her previous campers to continually return to a camp where she is director.

26

(Def.'s Opp. Br. at 19-20.)

Visinski's claim suffers from several defects.

First, to the extent that this claim apparently hinges on Camp Summit's inducing Visinski's enrollees to sign Summit's enrollment form in lieu of defendant's form, Visinski is essentially reiterating her tortious interference with contract claim, which has already been dismissed.

In addition, the claim is speculative.  Visinski does not allege, as she must, that she "would have executed specific contracts but for interference by" Camp Summit.  Riddell Sports, 872 F. Supp. at 79.  Instead, she posits that, but for Summit's interference, she could have persuaded her former Pocono Ridge campers to enroll wherever she became a camp director in future camp seasons.  But Visinski has alleged that she already cashed in on her good relations with former Pocono Ridge campers, because Summit agreed to pay her commissions on those campers' 2006 tuition fees.  Beyond these allegedly unpaid commissions – which are covered by her breach of contract claim – Visinski has failed to allege any facts demonstrating that her relations with former Pocono Ridge campers would have translated into additional, personally lucrative contracts, but for Summit's interference.  (And, of course, there is the fact that Visinski admittedly collected the 2006 tuition fees and pocketed them herself.)

### H.  Loss of Business for Unlawful Use of Confidential Information (Tenth Cause of Action)

For her tenth cause of action, Visinski invents a new tort named "loss of business for unlawful use of confidential information."  In support of this claim, she alleges the following:

> As part and parcel of the . . . agreement between plaintiff and defendant, plaintiff obtained defendant's confidential and proprietary information and/or trade secrets, which included defendant's lists of Camp Pocono Ridge campers . . . . [P]laintiff . . . appropriated such confidential and trade secret information to its own use,

27

terminated defendant's business relationship and employment and utilized such information to the prejudice and detriment of defendant.

(Countercl. ¶¶ 258, 260.)

I read this to allege misappropriation of trade secrets.  That duplicates other claims pleaded by Visinski that Summit has not moved to dismiss, namely her first cause of action (trademark violations and infringement) and her second cause of action (unfair competition).

Because the tenth cause of action is purely duplicative of other counts, it is dismissed.

## I.  Intentional or Negligent Infliction of Emotional Distress (Twelfth Cause of Action)

Visinski's twelfth cause of action alleges that Camp Summit's "malicious conduct" and "extraordinarily vindictive behavior" caused her to "suffer and sustain severe emotional distress and extreme mental anguish."  (Id. ¶¶ 268-69.)  In her opposition papers, Visinski wisely agrees to withdraw this claim (Def.'s Opp. Br. at 24), and the claim is accordingly dismissed.

## J.  Leave to Replead

According to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend the complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); see also Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").  Nevertheless, district courts have discretion to deny leave to amend if an amendment would be futile.  See Marchi v. Bd. of Coop. Educ. Servs., 173 F.3d 469, 477-78 (2d Cir. 1999).  Thus, "where the [claimant] is unable to demonstrate that [she] would be able to amend [her] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  Hayden, 180 F.3d at 53.

In keeping with the liberal spirit of Rule 15(a), Visinski has leave to amend her claim for defamation.  The remaining counts are dismissed with prejudice.

28

demonstrate that [she] would be able to amend [her] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." <u>Hayden</u>, 180 F.3d at 53.

In keeping with the liberal spirit of Rule 15(a), Visinski has leave to amend her claim for defamation.  The remaining counts are dismissed with prejudice.

## IV.  <u>Conclusion</u>

For the foregoing reasons, plaintiff Camp Summit's motion to dismiss defendant's fifth cause of action is denied, and its motion to dismiss defendant's third, fourth, sixth, eighth, ninth, tenth and twelfth causes of action is granted.

This constitutes the decision and order of the court.

Dated: April 13, 2007

_____

U.S.D.J.

BY FAX TO ALL COUNSEL

29